**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MERYL SQUIRES CANNON, | ) | |
| RICHARD KIRK CANNON, | ) | |
| ROYALTY PROPERTIES, LLC, and | ) | |
| CANNON SQUIRES PROPERTIES, LLC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 14-CV-5611 |
| | ) | |
| FOREST PRESERVE DISTRICT OF COOK | ) | |
| COUNTY, ILLINOIS; BMO HARRIS BANK, | ) | |
| N.A., UNITED STATES OF AMERICA; | ) | |
| BAYVIEW LOAN SERVICING, LLC; | ) | |
| FRANCIS L. KELDERMANS; MCGINLEY | ) | |
| PARTNERS, LLC; ROBERT MCGINLEY; and | ) | |
| DOES 1 through 15, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

The claims should be dismissed because there simply is no taking and no conspiracy to commit a taking when a public entity acquires property through a mortgage and the state court foreclosure process. Moreover, Plaintiffs cannot assert that there was a taking because the state courts already ruled that the Forest Preserve District acquired the property through the mortgage and not eminent domain. Finally, the fraud claims fail because Plaintiffs refused to enter into any transaction, and no one owed a duty to disclose information about other transactions to the Plaintiffs.

1. **There Was No Taking**.

Plaintiffs' response argues that liberal pleading standards save their claims,

but conclusions and pejorative characterizations, such as "the underhanded manipulation of the foreclosure process," are disregarded. (Dkt. 73, pgs. 8 & 12; *see also* Dkt. 60, ¶¶ 37, 40-46 & nn.4-6); *Cohen v. Am. Security Ins. Co.*, 735 F.3d 601, 611 (7th Cir. 2013) ("But simply calling the commission a kickback doesn't make it one."); *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."); *Ortega v. Ragen*, 216 F.2d 561, 563 (7th Cir. 1954) ("we disregard, as mere conclusions, the loose and general, the factually unsupported, characterizations of the complained of acts of the defendants, as malicious, conspiratorial, and done for the purpose of depriving plaintiffs of their constitutional rights") (quoting *McGuire v. Todd*, 198 F.2d 60, 63 (5th Cir. 1952)).

Plaintiffs characterize the Forest Preserve District as having "*not* utilize[d] the proper legal channels." (Dkt. 73, pg. 13 (emphasis in original).) But, a taking does not <u>legally</u> occur if a mortgage contract is enforced through the foreclosure process by a governmental entity.[1] *Warren v. Gov't Nat'l Mortgage Assoc.*, 611 F.2d 1229, 1234-35 (8th Cir. 1980); *DSI Corp. v. United States*, 655 F.2d 1072, 1074-75 (Ct. Fed. Cl. 1981). Thus, the Forest Preserve District properly utilized the Illinois state court process to acquire the property through the mortgage.

Regardless, Plaintiffs cannot plausibly allege that "the FPD evaded the

---

[1] Plaintiffs cite *Armstrong v. United States*, asserting a taking occurred. (Dkt. 73 pg. 9.) But, *Armstrong* involved more than the government simply enforcing a contract. There the government, outside the court process, prevented the enforcement of otherwise valid liens using "sovereign immunity of the Government," which was something "no private purchaser could have done." 364 U.S. 40, 74-48 (1960). Here, by contrast, the enforcement of the mortgage occurred in the Illinois court process.

Takings Clause requirement" by "conspiring with the other Defendants to purchase the Note, foreclosure, and then bid at the foreclosure auction" (Dkt. 73, pg. 11), because the Illinois Appellate Court already determined those actions were lawful in *Baker v. Forest Preserve District of Cook County*, 2015 IL App (1st) 141157, ¶¶ 10-13, 39-46. Since the Forest Preserve District lawfully acquired the loan documents and did not use eminent domain, Plaintiffs cannot assert a takings claim or argue that the purchase was improper.

Plaintiffs argue that *Baker* is not *res judicata* because Richard and Meryl Cannon were suing as "taxpayers" in *Baker* and they are suing individually here, making the unique argument that they lack identity or privity with themselves. (Dkt. 73, pgs. 13-14.) But, Plaintiffs allege that they are taxpayers here too. (Dkt. 60, ¶¶ 1-2.) Regardless, self-labeling does not allow the Plaintiffs to avoid the *res judicata* effect of *Baker*, which they themselves prosecuted and lost.

For purposes of *res judicata*, "[i]t is the identity of interests that controls in determining privity, not the nominal identity of the parties." *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill.2d 285, 296 (1992) (emphasis added) (explaining that privity exists between "'parties who adequately represent the same legal interests'") (citations omitted). Plaintiffs here clearly have an identity of interests with themselves as plaintiffs in the *Baker* litigation. In *Baker*, the Cannons sought to set aside the loan acquisition and terminate the foreclosure proceedings, arguing, among other things, that the Forest Preserve District was misinterpreting its statutory powers "in an effort to 'take' private property without

adhering to the related statutory and constitutional protections." (**Exhibit 1**, *Baker*, Sec. Am. Compl. ¶¶ 61-62); *see also Baker*, 2015 IL App. (1st) 141157 ¶ 45. The same legal predicate with respect to the same parcel of property forms the basis for Plaintiffs' complaint here.

Although Plaintiffs suggest that they sought to vindicate broader rights in *Baker*, that ignores the personal benefit that Plaintiffs would have realized had the *Baker* court ruled in their favor. *See Board of Educ. of Sunset Ridge School Dist. Number 29 v. Village of Northbrook*, 295 Ill.App.3d 909, 919 (1st Dist. 1998) ("for purposes of *res judicata*, privity exists between parties who share a mutual or successive relationship in property rights which were the subject of an earlier action"). If the Cannons had prevailed in *Baker*, the foreclosure would have been unwound and the Forest Preserve District's acquisition prohibited. A personal benefit would have inured to Plaintiffs, showing privity exists between the Cannons as plaintiffs in *Baker* and the Cannons as plaintiffs in this case. *See People ex rel. Hartigan v. Ill. Commerce Comm'n*, 243 Ill.App.3d 544, 550 (1st Dist. 1993) ("We find no distinction between the consumer and the taxpayer, as they are one and the same.").

*Res judicata* should also apply because Plaintiffs' interests were aligned with and adequately represented in *Baker*. The *Baker* plaintiffs vigorously argued that the Forest Preserve District lacked statutory authority to acquire loan documents and therefore had to use eminent domain to acquire the property. (**Exhibit 1**, *Baker*, Sec. Am. Compl. ¶¶ 61-62); *see also Baker*, 2015 IL App. (1st) 141157 ¶ 45.

As plaintiffs in *Baker*, the Cannons adequately represented the interests they seek to protect here, and Illinois courts have applied *res judicata* in similar circumstances to various parties arguing in different capacities. *See Walsh Constr. Co. of Ill. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 153 F.3d 830, 832 (7th Cir. 1998) ("Since an Illinois court issued the declaratory judgment, we look to the law of that state to determine whether claim preclusion (res judicata) bars Walsh's claim."); *Progressive Land Developers*, 151 Ill.2d at 297 (finding that interest of the Attorney General was adequately represented by the Nation of Islam); *Board of Ed. of Sunset Ridge*, 295 Ill.App.3d at 918-19 (holding that individual plaintiff's interests were adequately represented in prior proceeding by governmental and consumer groups); *Hartigan*, 243 Ill.App.3d at 551 (applying *res judicata* to individual claims brought subsequent to an action by the Attorney General, local governments, and consumer groups because "[t]heir interests were intertwined"). Regardless of how the Cannons labeled themselves in *Baker*, *res judicata* bars the claims asserted here.

Plaintiffs rely on two cases to argue that *Baker* does not bind them here, *Richards v. Jefferson County, Ala.* and *Lucas v. Planning Bd. of Town of LaGrange*, but neither case is similar. Unlike the Cannons here, the plaintiffs in *Richards* never received "any notice that a suit was pending which would conclusively resolve their legal rights." 517 U.S. 793, 800 (1996). Likewise, the plaintiffs in *LaGrange* were not actually parties to the prior action. 7 F.Supp.2d 310, 327 (S.D.N.Y. 1998). In contrast to the plaintiffs in *Richards* and *LaGrange*, the Cannons affirmatively

chose to litigate the issue of the Forest Preserve District's authority in the *Baker* action. Plaintiffs had a full and fair opportunity to litigate in state court and therefore cannot complain about the inability to re-litigate those issues. *See San Remo Hotel, L.P. v. City & County of San Francisco, Cal.*, 545 U.S. 342-43 (2005) ("We have repeatedly held, to the contrary, that issues actually decided in valid state-court judgments may well deprive plaintiffs of the 'right' to have their federal claims relitigated in federal court.").

2. **The Acquisition Ordinances Did Not Constitute A Taking.**

Plaintiffs argue that the enactment of ordinances had "severe negative economic impact" and were an independent taking. (Dkt. 73 pgs. 13-14 & pg. 10.) The interpretation of the ordinances is a question of law and the Plaintiffs' "subjective descriptions of the ordinances' effects upon them" are not taken as true. *Stahelin v. Forest Preserve District of DuPage County*, 376 Ill.App.3d 756, 773 (2d Dist. 2007); *see also Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 136 (1978) (rejecting taking claim based on legal restrictions placed on property by city ordinance and commenting that "Appellants, moreover, exaggerate the effect of the law on their ability to make use of the air rights above the Terminal in two respects."). The ordinances here were clearly prospective, authorizing participation in the foreclosure sale and proceeding with the acquisition. (Dkt. 60-1, Exh. 3, pgs. 7-12 & 30-31.) Such prospective legislation does not constitute a taking. *Davis v. Brown*, 357 Ill.App.3d 176, 183 (2d Dist. 2005); *Stahelin*, 376 Ill.App.3d at 775.

None of the cases cited by Plaintiffs hold that enactment of an acquisition ordinance, by itself, constitutes a taking. In fact, none of the takings cases cited by Plaintiffs, except *Lucas v. South Carolina Costal Council*, even held that a compensable taking occurred. And, even *South Carolina Costal* explains that a regulation must deny "all economically beneficial or productive use of the land" in order to constitute a taking. 505 U.S. 1003, 1015 (1992). There is nothing here showing that Plaintiffs lost all use of the land solely as a result of the enactment of the ordinances.

Because *Stahelin* and *Davis* establish that no taking occurred by enactment of the ordinances, Plaintiffs argue that the state cases should not be relied upon because they are not "federal case law." (Dkt. 73, pg. 13.) The Supreme Court, however, has stated: "State courts are fully competent to adjudicate constitutional challenges to local land-use decisions." *San Remo Hotel*, 545 U.S. at 347 ("It is hardly a radical notion to recognize that, as a practical matter, a significant number of plaintiffs will necessarily litigate their federal takings claims in state courts."). Defendants also cited *Danforth v. United States*, which similarly held that "[t]he mere enactment of legislation which authorizes condemnation of property cannot be a taking." 308 U.S. 271, 286 (1939). Plaintiffs cannot legally assert that the mere enactment of the ordinances was a taking.

Plaintiffs also argue that there was a taking because the ordinances depressed the value of the property when it sold at the foreclosure sale. (Dkt. 73, pgs. 6, 8, 10, & 13.) But, "[a] reduction or increase in the value of property [that]

- 7 -

may occur by reason of legislation . . . cannot be considered as a 'taking' in the constitutional sense." *Danforth*, 308 U.S. at 285. Furthermore, under Illinois law, the amount paid at the foreclosure sale constitutes the conclusive measure of the value of the property.[2] *NAB Bank v. LaSalle Bank N.A.*, 2013 IL App (1st) 121147, ¶ 20. Since the price paid at the foreclosure sale was the value of the property, Plaintiffs cannot legally demonstrate that the Forest Preserve District's ordinances had any effect on the foreclosure sale. *Lyons Sav. & Loan Ass'n v. Gash Assoc.*, 189 Ill.App.3d 684, 688 (1st Dist. 1989) (rejecting argument that "the Village's pending condemnation proceeding depressed the value of the property, and thus allowed the Village to circumvent its constitutional obligation to pay just compensation in its condemnation suit."). Thus, Plaintiffs cannot claim there was any diminution in value that could be compensable as a taking.

Lastly, Plaintiffs assert that there was a taking because there was a physical invasion of the property when the Forest Preserve District erected signs. (Dkt. 73, pgs. 6 & 10.) Plaintiffs, however, were ousted from the property in 2010 when the state court placed the property under the possession and control of a court appointed receiver. (Dkt. 63-1, Exh. 6, 5/18/10 Order.) Moreover, the Forest Preserve District had the ability to erect signs when the state court placed it in possession in October 2013. (Dkt. 63-1, Exh. 8, 10/10/13 Order.) Plaintiffs do not allege that the signs appeared before that point, and obtaining possession through

---

[2] Here, Plaintiffs claim the value of the property exceeded $14,500,000. (Dkt. 73, pgs. 6 & 10.) Yet, in *Baker*, Plaintiffs submitted appraisals and claimed the property was worth only $7,000,000, arguing the Forest Preserve District overpaid. (**Exhibit 2**, Excerpts of Briefs.)

the foreclosure process is not a taking. *Klump v. United States*, 50 Fed. Cl. 268, 271 (2001) ("there is not taking where, pursuant to court order, the government is in possession of the property . . . .").

**3.** **There Was No Taking & No Conspiracy To Commit A Taking.**

Contrary to Plaintiffs' argument that conspiracy is actionable by itself (Dkt. 73, pgs. 15-17), merely agreeing "to commit a wrongful act is not a tort, even if it might be a crime." *Adcock v. Brakegate, Ltd.* 164 Ill.2d 54, 63 (1994). Conspiracy requires at least one of the parties to commit "some act in furtherance of the agreement, which is itself a tort." *Id*. Plaintiffs cannot allege the existence of any tortious or unlawful act because *Baker* established that nothing unlawful or toritous occurred. *City of Chi. v. Fieldcrest Dairies, Inc.*, 316 U.S. 168, 171-72 (1942) ("Illinois has the final say as to the meaning of the ordinance in question. It also has the final word on the alleged conflict between the ordinance and the state Act."). And, simply having ulterior motives in meeting with the Cannons is not an independently tortious act upon which conspiracy can be predicated. *Adcock*, 164 Ill.2d at 63.

Plaintiffs argue that *United States v. Merchants Matrix Cut Syndicate* is inapplicable because the plaintiffs there obtained compensation. (Dkt. 73, pg. 19.) In *Merchants Matrix Cut Syndicate*, however, the Seventh Circuit explained that plaintiffs needed to seek compensation for a taking from the sovereign, and could not "isolate some fragment of the total acquisition process" to seek "damages from their landlord." 219 F.2d 90, 97 (7th Cir. 1955). Thus, if a taking occurs,

compensation is due *from the government*, not from private parties, and there can be no liability for conspiracy. Moreover, since takings are lawful, there is no unlawful act that can serve as the required predicate for a conspiracy.

**4.** **Richard & Meryl Cannon Lack Standing To Assert Claims.**

Richard and Meryl Cannon were not the owners of the property that was allegedly taken, but the Cannons argue that they can assert claims anyway because they were tenants and the LLCs were "*wholly* owned" by the Cannons. (Dkt. 73, pg. 20.) The Cannons' tenancy was derivative of the LLC's ownership. And, wholly owned or not, the Cannons' injury is still derivative and not actionable. "We are reminded that guarantors are similarly situated to other groups, such as shareholders, limited partners and creditors, none of which can proceed individually for alleged breaches against the principal." *Performance Elec. Inc. v. CIB Bank*, 371 Ill.App.3d 1037, 1040 (1st Dist. 2007).

**5.** **There Was No Fraud Because There Was No Transaction.**

As explained in Defendants' opening memorandum, Plaintiffs cannot establish reliance or damages on any alleged fraud because they were not induced to enter into a transaction. (Dkt. 63, pgs. 11-14.) Plaintiffs argue that a fraud claim can proceed in the absence of a consummated transaction, but cite no case where a court ever allowed such a claim to proceed. (Dkt. 73, pgs. 22-23.) More importantly, Plaintiffs were not parties to the transaction they are actually complaining about — the sale of the loan documents by BMO Harris Bank to the Forest Preserve District. (*Id.* pg. 21.) Plaintiffs cite no authority that allows them to assert fraud based on

an inability to insert themselves into a transaction between other parties.

Plaintiffs claim that there was fraudulent concealment and a duty to disclose the identity of the purchaser because a fiduciary or confidential relationship arose in the one meeting the Cannons had with the Forest Preserve District's attorney Frank Keldermans. (Dkt. 73, pg. 22.) As a general rule, a fiduciary or confidential relationship does not exist between a creditor and a debtor/guarantor or between an attorney and non-clients. *Santa Claus Indus., Inc. v. First Nat'l Bank of Chi.*, 216 Ill.App.3d 231, 238 (1st Dist. 1991); *Gold v. Vasileff*, 160 Ill.App.3d 125, 127-28 (5th Dist. 1987). Since a fiduciary or confidential relationship did not exist as a matter of law, Plaintiffs needed to plead that such a relationship arose. *Santa Claus Indus.*, 216 Ill.App.3d at 238 ("For example, the party seeking to establish the relationship must show that he placed trust and confidence in another so that the other gained influence and superiority over him. This degree of trust and confidence can be shown by such factors as degree of kinship, age disparity, health, mental condition, education, business experience, extent of reliance."). The Second Amended Complaint does not establish that such a special relationship arose.

Plaintiffs' brief asserts that the Cannons "trusted Keldermans." Any trust placed in Keldermans was, however, legally unfounded. Keldermans was the opposing party's attorney and had a duty to "represent his client with zeal and undivided loyalty." *Gold*, 160 Ill.App.3d at 127. Therefore, any trust or confidence the Cannons placed in Keldermans was "unreasonably placed and could not be the basis for an equitable type of action founded on breach of a fiduciary or confidential

relationship . . . ." *Id.* at 128. Moreover, the Second Amended Complaint does not establish that an attorney (Richard Cannon) and a pharmaceutical CEO (Meryl Cannon) had a disparity in age, health, or mental condition that could create such a confidential or fiduciary relationship. *Gonzalzles v. Am. Express Credit Corp.*, 315 Ill.App.3d 199, 210-11 (1st Dist. 2010) ("Plaintiff, a licensed physician, has also failed to plead any disparity between his education and business knowledge and that of defendants which might give rise to a fiduciary relationship."); *see also Cohen*, 735 F.3d at 614 (finding that no fiduciary or special relationship arose because "[t]he parties operated at arm's length."). There can be no claim of fraudulent concealment because no special relationship was created that would have required disclosure of the Forest Preserve District's intent to purchase the loan documents.

Finally, Plaintiffs cannot show damages arising from Defendants' alleged non-disclosure. The damage allegedly suffered — the loss of the property in the foreclosure — did not "result" from the fraudulent "misstatement or omission." *Lidecker v. Kendall College*, 194 Ill.App.3d 309, 314 (1st Dist. 1990). The loss of the property was the result of Plaintiffs' own non-payment of the debt they voluntarily created. (Dkt. 63-1, Exh. 5, Foreclosure Judgment.) A loss that resulted from Plaintiffs' own conduct is not actionable as fraud. *Cohen*, 735 F.3d at 613-14 ("Losing an opportunity to breach a contract cannot constitute a cognizable fraud harm."); *Rogalla v. Christie Clinic, P.C.*, 341 Ill.App.3d 410, 421 (4th Dist. 2003) (finding damages did not arise from the alleged fraud because plaintiff did not make

"any payments to Christie Clinic as a result of the alleged misrepresentations or omissions.").

**<u>Conclusion</u>**

As a matter of law, Plaintiffs cannot state claims for takings, conspiracy or fraud.  The Second Amended Complaint, which is Plaintiffs sixth attempt to plead viable claims, should therefore be dismissed with prejudice.

**FOREST PRESERVE DISTRICT OF COOK COUNTY, ILLINOIS,**

By:/s/ Christopher Carmichael
      One of its Attorneys

Christopher W. Carmichael
Maureen Browne Schoaf
HOLLAND & KNIGHT LLP
131 S. Dearborn St., 30th Floor
Chicago, Illinois  60603
Tel:  (312) 263.3600
Fax:  (312) 578.6666
christopher.carmichael@hklaw.com
maureen.schoaf@hklaw.com

**BMO HARRIS BANK, N.A.**

By:/s/ David T.B. Audley
      One of its Attorneys

David T.B. Audley
Bryan E. Jacobson
CHAPMAN & CUTLER LLP
111 West Monroe Street
Chicago, IL 60603-4080
Tel:  312-845-3000
Fax:  312-701-2361
audley@chapman.com
bjacob@chapman.com

**BAYVIEW LOAN SERVICING,
LLC**

By:/s/ Michael Weik _____
       One of its Attorneys

Craig C. Smith
Michael J. Weik
SMITH & WEIK LLC.
1011 Lake Street, Ste. 412
Oak Park, IL  60301
Tel:  708-386-9540
Fax: 708-386-7214
csmith@smithweiklaw.com
mweik@smithweiklaw.com

**FRANCIS L. KELDERMANS**

By:/s/ Daniel Feeney _____
       One of his Attorneys

Daniel M. Feeney
Brian J. Kerwin
MILLER SHAKMAN & BEEM LLP
180 N. LaSalle Street, Suite 3600
Chicago, Illinois  60601
Tel:  312-263-3700
Fax: 312-263-3270
dfeeney@millershakman.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on **March 7, 2016**, the foregoing **Reply in Support of Defendants' Motion to Dismiss the Second Amended Complaint** was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois by filing through the CM/ECF system, which served a copy of the foregoing upon all counsel of record.

By:<u>/s/ Christopher Carmichael</u>