UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MERYL SQUIRES CANNON; RICHARD KIRK CANNON; ROYALTY PROPERTIES, LLC; and CANNON SQUIRES PROPERTIES, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 14 C 5611 |
| v. | ) ) | Judge Sara L. Ellis |
| FOREST PRESERVE DISTRICT OF COOK COUNTY, ILLINOIS; BMO HARRIS BANK, N.A.; UNITED STATES OF AMERICA; BAYVIEW LOAN SERVICING, LLC; FRANCIS L. KELDERMANS; McGINLEY PARTNERS, LLC; ROBERT R. McGINLEY; and DOES 1 through 15; | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

In their latest attempt to contest the foreclosure of their property, Plaintiffs Meryl Squires Cannon and Richard Kirk Cannon (collectively, the "Cannons"), now joined by their wholly-owned corporations, Royalty Properties, LLC ("RPL") and Cannon Squires Properties, LLC ("CSP"), have filed a second amended complaint against Defendants Forest Preserve District of Cook County, Illinois (the "FPD"); BMO Harris Bank, N.A. ("BMO"); the United States of America, acting through its agency, the Federal Deposit Insurance Corporation (the "FDIC"); Bayview Loan Servicing, LLC ("Bayview"); Francis L. Keldermans; McGinley Partners, LLC ("McGinley Partners"); Robert R. McGinley; and unnamed defendants (Does 1–15).[1] The Court

---

[1] The Court previously dismissed a prior complaint filed by the Cannons against the FPD, BMO, Bayview, and the FDIC for lack of jurisdiction, finding that the United States, and not the FDIC, was the proper Defendant, and that federal jurisdiction was lacking without the United States as a named party. *Cannon v. Forest Pres. Dist. of Cook County*, No. 13 C 6589, 2014 WL 1758475 (N.D. Ill. May 2, 2014). The Cannons then voluntarily dismissed that suit without prejudice and filed the present lawsuit. Meryl

dismissed the Cannons' initial complaint, finding that they could not proceed against the United States for claims arising from fraud and that they had failed to adequately plead their fraud and conspiracy claims against the remaining Defendants. In the second amended complaint, Plaintiffs reassert fraud and conspiracy to commit and aid and abet fraud claims against all Defendants but the United States. But in order to maintain federal jurisdiction, they have added federal takings claims against the FPD, alleging that the FPD unconstitutionally transformed the Cannons' property into a forest preserve through the passage of an ordinance and the foreclosure process, with the remaining Defendants allegedly acting as the FPD's co-conspirators and aiders and abettors.

All Defendants have filed motions to dismiss [61, 62, 64]. Plaintiffs' takings claims fail, as the FPD ordinance at issue merely entailed planning for future acquisition of the property and did not pass any interest in the land to the FPD. Nor was the FPD's acquisition of the property through the foreclosure process a taking, as the FPD acted in its proprietary, and not sovereign, capacity. The fraud claims fail because Plaintiffs have not adequately pleaded reliance or damages. And without underlying wrongful conduct, the conspiracy and aiding and abetting claims cannot proceed on their own. Thus, the Court grants Defendants' motions and dismisses Plaintiffs' second amended complaint with prejudice.

---

Squires Cannon is also pursuing a separate lawsuit against the FPD and additional defendants, alleging, among other things, that the FPD violated her freedom of movement on the subject property under 42 U.S.C. § 1983. *See Squires-Cannon v. Forest Pres. Dist. of Cook County, Ill.*, No. 15 C 6876, Doc. 52 (N.D. Ill. Feb. 12, 2016).

## BACKGROUND[2]

In December 2006, the Cannons, through their two wholly-owned limited liability companies RPL and CSP, purchased a horse farm ("Horizon Farm") in Barrington, Illinois. To finance the purchase, RPL and CSP executed a $14,500,000 mortgage loan agreement with Amcore Bank, N.A. ("Amcore"), which the Cannons personally guaranteed. After the loan matured and the Cannons did not refinance or pay it off, Amcore instituted foreclosure proceedings. Amcore failed in 2009, however, with the FDIC taking over Amcore's assets as receiver. The FDIC entered into an agreement with BMO through which BMO acquired the mortgage and substituted in as the plaintiff in the foreclosure action.

Sometime thereafter, behind closed doors, BMO, Bayview, the FDIC, and Does 1–15 entered into an agreement with the FPD for the FPD to pay $14,000,000 for the mortgage with taxpayer funds.[3] Defendants refused to disclose to the Cannons that the FPD was the contemplated purchaser of the mortgage, despite this agreement. Instead, Keldermans, an attorney, affirmatively represented to the Cannons that the purchaser was a group of individuals operating as an LLC, identifying that LLC in a pre-negotiation and confidentiality agreement presented to them in a February 14, 2013 meeting as "Horizon Farms Loan Acquisition LLC." Doc. 60-2 at 18. The FPD's involvement was masked, in part, because Keldermans and the FPD

---

[2] The facts in the background section are taken from the second amended complaint and the exhibits attached thereto and are presumed true for the purpose of resolving the pending motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). The Court has also considered documents attached by Defendants that are referenced in the second amended complaint and central to Plaintiffs' claims. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). The Court has also taken judicial notice of matters of public record. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

[3] Although Horizon Farm had been appraised in October 2007 at over $29 million, its value had fallen by the time of the FPD agreement. An appraisal conducted in September 2012 valued Horizon Farm at $7 million. *See* Doc. 76-1 at 11.

knew the Cannons opposed turning Horizon Farm into a forest preserve. Based on Keldermans' representations, the Cannons discussed a potential deal with him wherein the "purchaser" would acquire the mortgage and forego seeking a deficiency judgment against the Cannons if they waived their ownership claims to Horizon Farm and assigned title to the purchaser. The Cannons rejected that offer, however. Thereafter, BMO sought court approval for the unnamed purchaser to inspect the property without disclosing the purchaser's identity.

Similarly, McGinley, one of the Cannons' neighbors, made overtures to the Cannons regarding Horizon Farm on the FPD's behalf. McGinley acted in exchange for certain recognition, compensation, and consideration from the FPD, such as use of Horizon Farm for fox hunting and equine purposes. On or about March 11, 2013, he met with the Cannons about a group of neighbors' interest in acquiring part or all of Horizon Farm, indicating the Cannons could share ownership or alternatively assign title to the group.[4] The Cannons asked for further details, including the identity of the neighbors, as they indicated they would not negotiate or share title with certain neighbors. Although they requested a more specific proposal from McGinley, soon after that conversation, they instead received a revised offer from Keldermans that for the first time included the opportunity to retain title to the house on Horizon Farm if the remainder of the property was deeded to the purchaser.

On June 27, 2013, the FPD executed and closed an assignment and assumption agreement with BMO, pursuant to which the FPD acquired the mortgage. The agreement was

---

[4] The second amended complaint attaches an email from McGinley, in which McGinley states that he was only approached by the FPD in May, after his meeting with the Cannons on March 11, and that this meeting was one he took "in part because of [the Cannons'] encouragement at [the] March 11 meeting." Doc. 60-2 at 81. This would seemingly contradict Plaintiffs' allegations that McGinley was acting on behalf of the FPD at the March 11 meeting, but Plaintiffs also allege that another neighbor, Bryan Cressey, informed the Cannons on May 9 of an earlier meeting in which McGinley presented the FPD with documents concerning Horizon Farm. The Court only notes this discrepancy in the timing at this stage.

entered into with the FDIC's and Bayview's assistance and approval. The FPD thereafter substituted in as the plaintiff in the foreclosure action. On August 30, 2013, the FPD obtained a judgment of foreclosure and sale.[5] On October 1, the FPD Board authorized the FPD to bid up to the judgment amount of $20,449,561.08 at the foreclosure sale. At the same meeting, the FPD Board enacted an ordinance to convert Horizon Farm to a forest preserve once the FPD acquired the land. *See* Doc. 60-1at 24–25 (describing that "a unified Forest Preserve be and the same is hereby created . . . that shall contain and connect lands now owned and lands to be acquired" and describing that land as Horizon Farm). On October 10, the state court entered an order placing the FPD in possession of Horizon Farm as of November 18, 2013, requiring the Cannons to vacate the property as of that date. The FPD prevailed at the foreclosure sale on October 18, paying $14.5 million. The FPD took title of Horizon Farm on May 16, 2014.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a

---

[5] On that same day, the Cannons, along with Todd Baker, filed a state court action against the FPD, the FPD Board, and BMO (the "*Baker* action"). In the *Baker* action, the Cannons and Baker asserted that the FPD violated the Forest Preserve and Open Meetings Acts. They sought to prevent foreclosure of Horizon Farm and to have the assignment and assumption agreement between the FPD and BMO rescinded. The trial court ruled against the Cannons and Baker. The Cannons and Baker appealed the ruling on the Forest Preserve Act claims. The Illinois Appellate Court found that the FPD acted within its statutory authority in acquiring Horizon Farm. *Baker v. Forest Pres. Dist. of Cook County*, 33 N.E.3d 745, 756, 2015 IL App (1st) 141157, 393 Ill. Dec. 1 (2015). The Illinois Supreme Court denied leave to appeal, *Baker v. Forest Pres. Dist. of Cook County*, 39 N.E.3d 999 (Table), 396 Ill. Dec. 173, and the *Baker* plaintiffs did not file a petition for writ of certiorari with the United States Supreme Court.

5

claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'— in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

## ANALYSIS

### I. Takings Claims (Counts I, II, and III)

The Fifth Amendment's takings clause (applicable against the states and their subdivisions through the Fourteenth Amendment) provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Plaintiffs bring two substantive takings claims. First, they argue that the FPD's enactment of the October 1, 2013 ordinance approving the creation of a forest preserve to include Horizon Farm amounted to a taking because it imposed significant legal disabilities on the property, reduced its value before the October 18 foreclosure sale, discouraged other parties from bidding at the sale, and allowed the FPD to obtain the property at a lower price. Next, Plaintiffs argue that the FPD effected a

6

taking by manipulating the mortgage foreclosure process so as to avoid paying just compensation for Horizon Farm. Finally, Plaintiffs contend that the remaining Defendants are also liable for the alleged takings as co-conspirators and aiders and abettors. The Court addresses these claims in turn.

### A. The FPD's October 1, 2013 Ordinance to Create a Forest Preserve (Count I)

First, Plaintiffs argue that the enactment of the October 1, 2013 ordinance amounted to a regulatory taking of Horizon Farm. A regulatory taking is "a restriction on the use of property that [goes] 'too far.'"[6] *Horne v. Dep't of Agric.*, --- U.S. ----, 135 S. Ct. 2419, 2427, 192 L. Ed. 2d 388 (2015) (quoting *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S. Ct. 158, 67 L. Ed. 322 (1922)); *see also Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992) (a regulatory taking occurs "where regulation denies all economically beneficial or productive use of land"). In determining whether a regulatory taking has occurred, the Court considers "the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Horne*, 135 S. Ct. at 2427.

The October 1, 2013 ordinance provides for the creation of a forest preserve from land the FPD would acquire, contemplated to include Horizon Farm. *See* Doc. 60-1 at 24–29. Plaintiffs insist that the ordinance automatically imposed various legal disabilities on Horizon

---

[6] A regulatory taking is distinguished from a physical taking, where the government has a "categorical duty to compensate the former owner." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322, 122 S. Ct. 1465, 152 L. Ed. 2d 517 (2002). "This longstanding distinction between acquisitions of property for public use, on the one hand, and regulations prohibiting private uses, on the other, makes it inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa." *Id.* at 323.

7

Farm before the FPD actually took title to the property.[7] *See* Doc. 60 ¶ 32 (listing the regulatory powers the FPD gains by statute over land designated as a forest preserve, including regulating the speed on roadways, regulating modes of travel, issuing licenses for particular activities, and maintaining a police force). But the Court need not accept Plaintiffs' allegations of the effects of the ordinance because the effect of the ordinance is a question of law. *See Stahelin v. Forest Pres. Dist. of DuPage County*, 877 N.E.2d 1121, 1129, 376 Ill. App. 3d 765, 315 Ill. Dec. 792 (2007) (refusing to accept plaintiffs' perceptions of the effect of an ordinance, noting that "the interpretation of an ordinance is a question of law").

Examining the ordinance's language, the Court fails to see how it could qualify as a regulatory taking. The ordinance did not give the FPD power to regulate, limit, or control Plaintiffs' ability to use Horizon Farm while it remained under Plaintiffs' ownership. Instead, it merely provides that, to the extent the FPD acquired Horizon Farm in the future, it would become part of a forest preserve. Such a prospective enactment does not qualify as a taking. *See Davis v. Brown*, 851 N.E.2d 1198, 1204–05, 221 Ill. 2d 435, 303 Ill. Dec. 773 (2006) (Illinois Department of Transportation's filing of a map indicating future rights of way did not constitute a regulatory taking); *Griffin v. City of N. Chicago*, 445 N.E.2d 827, 905, 112 Ill. App. 3d 901, 68 Ill. Dec. 183 (1983) ("Generally, the adoption of a resolution or the entering into negotiations to acquire land does not pass any interest in that land."). In fact, Plaintiffs' claim was rejected in almost the exact same situation over seventy years ago by the Illinois Supreme Court,

---

[7] In their response, Plaintiffs also represent that the FPD publicly labeled Horizon Farm a forest preserve on physical signs before it held title, erecting signs at Horizon Farm's entrances stating it was FPD property. *See* Doc. 73 at 11, 15. Although these allegations are not included in the second amended complaint, the Court may consider them because they are consistent with the allegations in the second amended complaint. *See Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752–53 (7th Cir. 2001). But even accepting that the FPD erected signs on the property at some point prior to taking title, as explained below, this does not change the Court's analysis of whether the ordinance at issue amounts to a regulatory taking.

underscoring that no taking occurred here. *See Eckhoff v. Forest Pres. Dist. of Cook County*, 36 N.E.2d 245, 248–49, 377 Ill. 208 (1941) (a property owner was not entitled to compensation for the alleged damages caused by the forest preserve district's passage of an ordinance designating certain portions of the property owner's land part of an intended forest preserve and the subsequent delay in the forest preserve's acquisition of that land). In holding that no taking occurred, the Illinois Supreme Court observed that "[t]he fact that at some future time a municipal corporation, with power of eminent domain, may require the land of a private owner, is one of the conditions on which the owner holds land in this State." *Id.* at 248. The same can be said here, with the ordinance amounting to no more than "mere planning or plotting in anticipation of a public improvement." *City of Chicago v. Loitz*, 329 N.E.2d 208, 211, 61 Ill. 2d 92 (1975); *see also Stahelin*, 877 N.E.2d at 1130–31 (ordinance was not a taking where it "provides the District no enforcement mechanism to regulate plaintiffs' property" and was "at most planning in anticipation of a possible future taking and do[es] not effect a taking itself"); *cf. Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 14–15, 104 S. Ct. 2187, 81 L. Ed. 2d 1 (1984) (taking does not occur in condemnation proceeding until title passes to government because prior to that, the landowner is free to do what he wants with the land, even if the existence of the condemnation proceedings "reduced the price that the land would have fetched," since "impairment of the market value of real property incident to otherwise legitimate government action ordinarily does not result in a taking"); *Agins v. City of Tiburon*, 447 U.S. 255, 263 n.9, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980) (rejecting argument that precondemnation activities constitute taking), *abrogated on other grounds by Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 125 S. Ct. 2074, 161 L. Ed. 2d 876 (2005). Thus, the October 1, 2013 ordinance did not amount to a taking and the Court dismisses the claim with prejudice.

## B. The FPD's Foreclosure Actions (Count II)

Plaintiffs also bring a physical takings claim, alleging that the FPD's actions in taking possession of Horizon Farm through the foreclosure process amounted to a taking without just compensation. The FPD responds that its actions in acquiring Horizon Farm cannot support a takings claim because it acquired the property not through its eminent domain powers but rather private contractual means as authorized by the Forest Preserve District Act. *See Baker*, 33 N.E.3d at 754–56 (noting the FPD's ability to acquire land "by gift, grant, purchase, or condemnation" and concluding that the FPD was "within its statutory authority to acquire the property in the manner it did"). Because the FPD was acting as a private party and not in its sovereign capacity, the FPD argues that Plaintiffs can only take advantage of contractual remedies to contest the FPD's actions. *See Lawndale Restoration Ltd. P'ship ex rel. Boulevard Realty Servs. Corp. v. United States*, 95 Fed. Cl. 498, 511–12 (Fed. Cl. 2010) (because HUD undertook foreclosure in its proprietary capacity as mortgagee, the plaintiff was not entitled to compensation under the takings clause).

The Court agrees with the FPD that Plaintiffs do not have a takings claim for any of the FPD's actions connected to its acquisition of the mortgage and Horizon Farm through the foreclosure sale because the FPD acted in its proprietary, and not sovereign, role throughout the process. *See A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1156 (Fed. Cir. 2014) ("Proprietary government action typically involves bargaining with private actors for the provision or procurement of goods and services; the action is deemed proprietary even though the government may enter into the contractual relationship in pursuit of a larger governmental objective."). As the Illinois Appellate Court found in *Baker*, and even the Cannons acknowledged in that action, the FPD acquired the property as a private party not through

eminent domain but rather by purchasing the mortgage and participating in the foreclosure sale. *Baker*, 33 N.E.3d at 748, 754–55. Because the FPD acted as a private party, no taking requiring just compensation occurred, leaving Plaintiffs only with any remedies that were available to them in the foreclosure process.[8] *See St. Christopher Assocs., L.P. v. United States*, 511 F.3d 1376, 1385 (Fed. Cir. 2008) ("In general, takings claims do not arise under a government contract because . . . the government is acting in its proprietary rather than its sovereign capacity, and because remedies are provided by the contract."); *Warren v. Gov't Nat'l Mortg. Ass'n*, 611 F.2d 1229, 1234 (8th Cir. 1980) ("[M]ortgage foreclosures . . . are not in and of themselves powers of a governmental nature."); *Syriani v. Freddie Mac Multiclass Certificates, Series 3365*, No. CV 12-3035-JFW (JEMx), 2012 WL 6200251, at *4 (C.D. Cal. July 10, 2012) (no taking occurs where a governmental entity "is merely acting as a private party enforcing a contract" and "not acting as a sovereign to expropriate private property"); *Klump v. United States*, 50 Fed. Cl. 268, 271 (Fed. Cl. 2001) ("[W]hen the government simply asserts its ultimate right to ownership of an interest in property through the same legal channels that any other individual would employ to assert such an interest, no taking under the Fifth Amendment occurs."). Thus, the Court dismisses Plaintiffs' physical takings claim with prejudice.

### C. Conspiracy to Commit and Aiding and Abetting the FPD's Takings (Count III)

Finally, Plaintiffs allege that the non-FPD Defendants conspired with and aided and abetted the FPD in committing the alleged taking of Horizon Farm. As the Court already noted in its prior opinion in this case, a conspiracy claim cannot survive where a plaintiff fails to state an underlying cause of action. Doc. 40 at 10; *see also Sow v. Fortville Police Dep't*, 636 F.3d

---

[8] The state foreclosure process appears to have concluded. Because all potential claims Plaintiffs could have brought concerning the foreclosure process are foreclosed as a result, the Court will not address Plaintiffs' theories that the FPD improperly manipulated the foreclosure process.

293, 305 (7th Cir. 2011) ("[T]he absence of any underlying violation of Plaintiff's rights precludes the possibility of Plaintiff succeeding on a conspiracy claim."). Similarly, Plaintiffs' aiding and abetting claims require independent underlying conduct to be viable. *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (although aiding and abetting is not an independent tort, it "is a theory for holding the person who aids and abets liable for the tort itself"). Because no taking occurred, the Court dismisses Plaintiffs' conspiracy and aiding and abetting claims.[9]

## II. Fraud Claims (Counts IV, V, and VI)[10]

In its prior opinion addressing the Cannons' original complaint, the Court dismissed the fraud claims against the non-FDIC Defendants without prejudice, finding that they did not sufficiently allege reliance, a duty to disclose, or damages, and additionally that the Cannons had not pleaded their fraud claims with sufficient particularity pursuant to Rule 9(b). *See* Doc. 40 at 6–9. Additionally, the Court dismissed the conspiracy to commit fraud claims for lack of any underlying wrongful conduct. *Id.* at 10. Plaintiffs have repleaded these claims in an attempt to cure the identified defects, bringing direct fraud claims against Keldermans, the FPD, McGinley, and McGinley Partners, and also alleging that all non-FDIC Defendants were co-conspirators

---

[9] Defendants raise a number of other reasons for dismissing the takings claims, but the Court need not address them, having found that the takings claims fail on other grounds.

[10] Because the Court is dismissing the claims over which it has original jurisdiction with prejudice, the Court has discretion to decline to exercise supplemental jurisdiction over the remaining state law fraud claims. *See* 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). The Seventh Circuit, however, urges district courts to exercise their discretion to retain jurisdiction where substantial judicial resources have been expended on resolution of the supplemental claims or "where it is obvious how the claims should be decided." *See Williams Elec. Games, Inc. v. Garrity*, 479 F.2d 904, 906–07 (7th Cir. 2007) (collecting cases). District courts should consider, at every stage of the litigation, whether supplemental jurisdiction serves "the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997). Here, in the interest of judicial efficiency and in light of the Court's familiarity with the fraud claims, the Court retains jurisdiction over the supplemental state law claims and addresses the non-FDIC Defendants' remaining arguments for dismissal of these claims.

and aiders and abettors of the alleged fraud. The non-FDIC Defendants argue that these claims have the same pleading deficiencies identified by the Court in its prior opinion and so must be dismissed with prejudice.

To state a claim for fraud, Plaintiffs must allege that (1) Defendants made a false statement or omission of material fact, (2) Defendants knew of or believed in its falsity, (3) Defendants intended to induce Plaintiffs to act, (4) Plaintiffs acted in reliance on the truth of Defendants' statements, and (5) damages resulted from Plaintiffs' reliance. *Weidner v. Karlin*, 932 N.E.2d 602, 605, 402 Ill. App. 3d 1084, 342 Ill. Dec. 475 (2010). Additionally, to the extent Plaintiffs claim fraudulent concealment, they must allege that Defendants had a duty to disclose the omitted fact to them. *Id.*; *see also Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013).

Against Keldermans and the FPD, Plaintiffs allege that, at the FPD's request, Keldermans met with the Cannons to discuss an offer regarding Horizon Farm, affirmatively misrepresenting that a group of individuals, operating under the name of "Horizon Farms Loan Acquisition LLC," was interested in acquiring the property. Plaintiffs further allege that Keldermans failed to disclose that the FPD was behind the LLC despite knowing that the FPD could not own or operate as an LLC and that Plaintiffs opposed efforts to turn Horizon Farm into a forest preserve. Plaintiffs contend Keldermans made the representations to insulate the FPD from any challenge to its plans to use public funds to purchase the mortgage, keeping Plaintiffs from gaining knowledge of the FPD's plans and from fully participating in what should have been an open governmental process. They claim these misrepresentations and omissions allowed the FPD to gain an upper hand and kept BMO from accepting the Cannons' settlement offer even though it

equaled what the FPD paid for Horizon Farm. They also claim as damages displacement from Horizon Farm and being placed in a worse negotiating position.

As for their claim against McGinley, McGinley Partners, and the FPD, Plaintiffs allege that McGinley misrepresented that a group of neighbors wanted to acquire part of Horizon Farm without revealing their identity or that McGinley was acting to facilitate the FPD's acquisition of Horizon Farm. Although the Cannons inquired about the identity of the group of neighbors, Plaintiffs allege that McGinley remained silent despite knowing that Plaintiffs did not want the FPD to acquire the property. Plaintiffs claim they relied on McGinley's silence and disclosed their willingness to negotiate with this group, which allegedly prevented them from timely opposing the FPD's acquisition of the property, kept BMO from accepting the Cannons' offer, and subjected Plaintiffs to additional litigation and expenses.

For many of the same reasons the Court dismissed the Cannons' fraud claims in its prior opinion, these allegations also fail to set forth cognizable claims of fraud. First, Plaintiffs have again failed to sufficiently allege the required reliance element. In their second amended complaint, Plaintiffs admit that they are complaining of transactions they did not consummate or with which they were not even involved but attempt to get around this fact by claiming that they nonetheless entered into confidential discussions with Keldermans and McGinley regarding the property.[11] The fact that they refused to enter into transactions with the alleged private parties, who turned out to be the FPD, cannot form the basis of a fraud claim. Even if they engaged in discussions with Keldermans or McGinley, without thereafter entering into the transactions,

---

[11] Although Plaintiffs claim they signed a pre-negotiation and confidentiality agreement, the agreement attached to their second amended complaint, which trumps their allegations, is unsigned. Doc. 60-2 at 18; *See Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010) ("Where [the complaint's] allegations are contradicted by written exhibits that [plaintiff] attached to his amended complaint, . . . the exhibits trump the allegations.").

14

Plaintiffs cannot claim that they relied on any misrepresentations or omissions made by Keldermans or McGinley to their detriment. *See Reid v. Harvey Motorcycle & Camper*, No. 05 C 5375, 2007 WL 4277435, at *6 (N.D. Ill. Nov. 30, 2007) ("Reid must demonstrate that he entered into a transaction in reliance on Watson's fraudulent statements and suffered damages as a result of his reliance. Since Reid did not enter into a transaction with Watson in reliance on Watson's fraudulent statements, and cannot demonstrate any damages suffered individually by him alone, his claim once again fails at the fourth and fifth requirements, and the claim must be dismissed.").

Additionally, Plaintiffs' damages allegations suffer from the same defect identified in the Court's prior opinion: their alleged damages arise from their own actions in failing to pay their mortgage and not from the alleged concealment of the fact that the FPD was purchasing the mortgage. *See* Doc. 40 at 8. Although Plaintiffs claim that they were harmed because they were unable to intervene earlier in the FPD's scheme to purchase the mortgage, this ignores the fact that BMO could sell the note to anyone without notice or consent. *See* Doc. 63-1 at 7.[12] Any claimed damages were of Plaintiffs' own making, and their claim to have been harmed because they relied on the failure to identify the FPD as the purchaser of the mortgage fails. *See Cohen*, 735 F.3d at 614 (finding plaintiff did not allege damages for purposes of fraud claim where the defendant was authorized to impose charges and the plaintiff was required to pay them). Thus, the Court dismisses Plaintiffs' fraud claims.[13] Because there is no underlying fraud claim, the

---

[12] The Court may consider the note, attached to the FPD, BMO, Bayview, and Keldermans' motion to dismiss, because Plaintiffs reference it in the second amended complaint and it is central to Plaintiffs' claims. *See Hecker*, 556 F.3d at 582–83.

[13] Because the Court finds that Plaintiffs have failed to sufficiently allege reliance and damages, both required elements of a fraudulent misrepresentation or concealment claim, the Court need not address the non-FDIC Defendants' arguments that Plaintiffs have also not adequately alleged that Keldermans and McGinley had a duty to disclose or that the Cannons lack standing to assert the fraud claims.

Court also dismisses the conspiracy to commit fraud and aiding and abetting fraud claim. *See Zachman v. Vohra*, No. 1:15 CV 5293, 2015 WL 7423783, at *6–7 (N.D. Ill. Nov. 23, 2015) (dismissing aiding and abetting and conspiracy claims because plaintiff had not adequately pleaded an underlying fraud claim); *Indeck N. Am. Power Fund, L.P. v. Norweb PLC*, 735 N.E.2d 649, 662, 316 Ill. App. 3d 416, 249 Ill. Dec. 45 (2000) (because "conspiracy is not an independent tort . . . . [w]here, as here, a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails").

Given the fact that Plaintiffs were previously allowed to cure the deficiencies identified by the Court and failed to do so, the dismissal of Plaintiffs' fraud, conspiracy to commit fraud, and aiding and abetting fraud claims is with prejudice. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 734–35 (7th Cir. 2014) (affirming dismissal with prejudice of first amended complaint after initial complaint was dismissed without prejudice); *Pirelli Armstrong Tire Corp., Retiree Med. Benefits Trust v. Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *1 (N.D. Ill. Feb. 18, 2010) (dismissing amended complaint with prejudice after previous dismissal of ICFA and unjust enrichment claims without prejudice), *aff'd*, 631 F.3d 436 (7th Cir. 2011).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss [61, 62, 64]. The Court dismisses the second amended complaint with prejudice. This case is terminated.

Dated: May 9, 2016

_____
SARA L. ELLIS
United States District Judge